Action by Harriet T. Stanley and others against John W. Freckelton. Case agreed. Judgment for plaintiffs.

Argued before BARNARD, P. J., and DYKMAN, J.

*A. Edward Woodruff*, for plaintiffs.    *Chas. F. Moody*, for defendant.

BARNARD, P. J. The title to the property in question was in Samuel B. Wilmott. In April, 1855, Wilmott executed a mortgage thereon to Lawrence Seaman, Jr. The mortgage contained the power of sale. Isaac Willett purchased the mortgage in March, 1869. In April, 1869, Willett commenced a foreclosure by advertisement under the Revised Statutes, (2 Rev. St. p. 545, as amended by chapter 346, Laws 1844.) Wilmott died in 1861, leaving a will, and devising his lands to his executor to sell and distribute among the children of testator's brother. One of the executors only qualified, and he died in 1862, and no administrator with the will annexed was ever appointed. Wilmott left one child only, a son of full age. By the amendment of 1844, in case of death of mortgagor, the notice of sale was required to be served on the personal representatives. The sale of the mortgaged lands was made without the service of such notice, and the plaintiff's predecessor in title obtained a deed in July, 1869, under the sale. The plaintiff and his grantors have been in possession, claiming title, since that time. The defendant agreed to buy the same, and the question is whether the title is a merchantable one. There are two general term decisions bearing upon the question. *Anderson* v. *Austin*, 34 Barb. 319, holds that where there was no executor or administrator the foreclosure was good, if conducted in the mode otherwise prescribed by statute. The point was directly involved, for the judge (EMMETT) held at circuit that the rights of all parties were cut off. *King* v. *Duntz*, 11 Barb. 191, and *Cole* v. *Moffitt*, 20 Barb. 18, seem to support this view of the statute. The case of *Bond* v. *Finn*, (Sup.) 4 N. Y. Supp. 569, upholds the same view. Notice of sale in this case was served on certain persons other than the personal representative of a deceased mortgagor, and the sale was held good as to this person. The statute as to foreclosure by advertisement was fully observed, and it was not the fault of the mortgagee if those interested in the estate did not have personal representatives appointed to succeed the deceased executor. The judgment should therefore be that the defendant takes the title.

---

## EQUITY GASLIGHT CO. *v.* McKEIGE.

*(Supreme Court, General Term, Second Department. July 22, 1892.)*

CORPORATIONS—CANCELLATION OF STOCK—RIGHTS AGAINST DEPOSITEE.

    Plaintiff issued 30,000 shares of its stock to its president, and deposited the certificate therefor with defendant, to be delivered to A., B., and C. on completion of certain work they had undertaken for plaintiff. The work was never commenced, A. and B. having been convicted of an offense, and imprisoned, and C. being a fugitive from justice. A., who had been principal actor in the transaction for the three, executed a release to the company, signing thereto the names of B. and C. The genuineness of the written authority from C. to sign was disputed, but was not disproved. *Held*, that defendant was properly directed to deliver up the stock.

Appeal from special term, Kings county.

Action by the Equity Gaslight Company against Ferdinand McKeige to compel defendant to surrender for cancellation certain shares of stock deposited with him, to be delivered on condition to third parties. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before BARNARD, P. J., and CULLEN and DYKMAN, JJ.

*Gratz Nathan*, for appellant.    *Horace Graves*, for respondent.

BARNARD, P. J. On the 27th of August, 1889, the plaintiff issued to its president a certificate for 30,000 shares of its stock. The plaintiff company

had just before that made a construction agreement with George F. Work, Louis E. Pfieffer, and John McFarlone. The certificate was to be deposited with the defendant until the agreement was fulfilled by the contractors. The work was never commenced by the contractors. Work and Pfieffer were convicted for some crime in Pennsylvania, and were imprisoned, and McFarlone became a fugitive. The defendant was the treasurer of the plaintiff, and knew of the agreement, and the same is specified in the receipt which he gave to the contractors for the stock. On the 21st of November, 1890, the contractors authorized the cancellation of the stock certificate. This authorization was not signed by McFarlone personally, but was signed by Work in his name. Work had been a principal actor for all the firm of contractors, and had given an order on the defendant in October, 1890, to deliver up the stock to the plaintiff's president. It was proven that Pfieffer had given authority to Work to sign this order for him. On the 27th of November, 1890, the contractors gave a general release to the plaintiff. Work signed this paper for McFarlone. The only material dispute in the case is as to the authority of Work to act for McFarlone. In the early part of 1890, Work gave to the plaintiff's president a paper purporting to have been signed by McFarlone, stating that any agreement made between the plaintiff and Work and Pfieffer would be satisfactory to him. Devlin, who knew McFarlone's handwriting, testified to its genuineness. Devoe testified that it was not. The paper is not dated, and has no place upon it indicating where it was written. The fact that he was then a fugitive will probably account for this, but, if the handwriting is genuine, those facts are of no importance. There is no sufficient ground to reverse the finding of the trial judge that McFarlone united with his co-contractor in canceling the certificate. The judgment should be affirmed, with costs. All concur.